UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRANNON CROWE                                                CIVIL ACTION

VERSUS                                                       NUMBER: 14-1130

MARQUETTE TRANSPORTATION                                     SECTION: "N"(5)
COMPANY GULF-INLAND, LLC

## ORDER AND REASONS

The Court previously issued a partial ruling on Marquette's Motion to Compel. (Rec. doc. 16). In that Minute Entry (rec. doc. 23), the Court ordered:

> Request for Production No. 15: on or before January 16, 2015, Plaintiff is to provide the Court, for purposes of an *in camera* inspection, those banking records that would reflect any use of his debit card in April of 2014
>
> and
>
> Request for Production No. 30: on or before January 16, 2015, Plaintiff is to provide the Court, for purposes of an *in camera* inspection, with the Facebook history of any account(s) that he had or has for the time period commencing two (2) weeks prior to the incident in question to the present date.

The submissions described above have been made and the Court has reviewed the materials submitted. Based upon that review, the pleadings and oral argument of counsel, the Court now rules upon the outstanding issues raised in Marquette's Motion.

### A. Plaintiff's Banking Records

In its Motion, Marquette sought an order requiring Plaintiff, Brannon Crowe ("Crowe"), to provide certain of his banking records in response to its Request for Production No. 15. The basis for this request was Marquette's desire to determine whether Crowe used his debit card in or near Port Sulphur, Louisiana shortly before his alleged accident, based upon a Facebook message that Marquette alleges Crowe sent a co-worker, in which he allegedly admits to having injured himself while fishing. (Rec. doc. 16-1 at p. 3).

Crowe's counsel has provided the records the Court ordered produced (debit card records for April 2014) and the Court has reviewed them. There is nothing in those records that the Court finds in any way relevant or discoverable. The records do not indicate any usage of the debit card by Crowe in or anywhere near Port Sulphur, as suspected by counsel for Marquette. Accordingly, Marquette's request for production of that information is denied. Crowe's banking records that are the subject of Request No. 15 need not be produced.

### B. Plaintiff's Facebook History

In its written discovery requests, Marquette also sought a complete copy of Crowe's Facebook history and went so far as to explain to Crowe and/or his counsel just how to download that history:

> **REQUEST FOR PRODUCTION NO. 30**
>
> An unredacted, unedited digital copy of your entire Facebook page from the onset of your employment with Marquette until present. (This is a simple process specifically provided under the "General Settings" page on Facebook. Just click on "Download a copy of your Facebook data" and follow the instructions.

2

Crowe responded to that Request on December 5, 2014, producing nothing:

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Plaintiff objects to this Request as vague, over broad and unduly burdensome. Plaintiff further objects to the extent this Request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objections and in the spirit of cooperation, **plaintiff does not presently have a Facebook account.**

(Rec. doc. 16-2 at p. 26) (emphasis added).

Crowe later testified in his deposition that he stopped having a Facebook account "around October" of 2014. (Rec. doc. 21-1 at p. 5). In addition, when shown a printout of a Facebook message that appears to have been sent from an account bearing the username "Brannon CroWe," Crowe denied sending the message, testifying that his account had been "hacked" and that he did "not have a capital W in [his] name." (*Id.*).

Pursuant to the Court's Order quoted above, Crowe, through counsel, has now submitted to the Court for *in camera* review an astonishing 4,000-plus pages of Facebook history from the account "Brannon CroWe." While the Court has made a preliminary review of certain of these materials, it is not about to waste its time reviewing 4,000 pages of documents *in camera* when it is patently clear from even a cursory review that this information should have been produced as part of Crowe's original response. This production makes it plain that Crowe's testimony, at least in part, was inaccurate. That alone makes this information discoverable.

The Court's review of the pleadings, the attachments thereto, the argument of counsel and the documents produced by Crowe for *in camara* review establish the

3

following notable facts. Marquette served its written discovery upon Crowe's counsel on October 17, 2014. (Rec. doc. 16-1 at p. 1). Crowe's Facebook records from the "Brannon CroWe" account indicate that account was deactivated on October 21, 2014. Counsel for Marquette is entitled to explore the timing of this deactivation.

The same Facebook records indicate that the account was accessed routinely by an iPhone with an IP address of 108.215.99.63 beginning well before the alleged accident up to and including on the date of deactivation. On January 7, 2015, the account was reactivated by the same iPhone with the same IP address. Counsel for Marquette is entitled to explore these matters, particularly given the current dispute over the status of Crowe's iPhone service and whether he was able to and did send "text messages" to others at points in time when he claimed to be unable to do so.

Similarly, counsel for Marquette is entitled to analyze the thousands of pages of Facebook messages Crowe exchanged with others, including his co-worker, Robert Falslev, particularly given his testimony that his account: (1) did not use a capital "W" in its name, (2) that it was hacked, and (3) that he did not send one particular Facebook message to Falslev stating he was injured fishing, rather than on the Marquette vessel. (Rec. doc. 16-2, Ex. B).

Finally, the Court is troubled by Crowe's refusal to produce any responsive documents on the basis of the statement that he did not "presently have a Facebook account." The records indicate that Crowe did not delete his account but deactivated it. It is readily apparent to any user who navigates to the page instructing how to deactivate an account that the two actions are different and have different consequences:

**How do I deactivate my account?**

You can deactivate your account temporarily and choose to come back whenever you want.

To deactivate your account:

1. Click the account menu ▼at the top right of any Facebook page
2. Select Settings
3. Click Security in the left column
4. Choose Deactivate your account then follow the steps to confirm

If you deactivate your account your profile won't be visible to other people on Facebook and people won't be able to search for you, though some information, such as messages you sent to friends, may still be visible to others.

If you'd like to come back to Facebook anytime after you've deactivated your account, you can reactivate your account by logging in with your email and password. Your profile will be restored in its entirety (ex: friends, photos and interests). Remember that you will need to have access to the login email address for your account in order to reactivate it.

If you can't get into your account, you can reset your password.

**To permanently delete your account:**

Permanently deleting your account means you will not ever be able to reactivate or retrieve any of the content or information you've added. If you would like to permanently delete your account with no option for recovery, please contact us.

**I deactivated my account. How do I reactivate it?**

If you've deactivated your account, you can reactivate it at any time just by logging in. If you can't remember your password, you can request a new password. Learn more about how to reactivate your account if you can't access the email address you listed on it.

*Found on the web at*:
https://www.facebook.com/help/214376678584711.

5

It is worth noting here that in its Request for Production 30, Marquette actually provided instructions how to access and download a copy of the Facebook account history it was seeking from Crowe. (Rec. doc. 16-2 at p. 27). Moreover, the Court heard oral argument on Marquette's Motion on January 7, 2014. The Court ruled from the bench that a copy of Crowe's Facebook page was to be provided *in camera* and followed that ruling with a Minute Entry entered that same day. (Rec. doc. 23). The records produced by Crowe indicate he reactivated his Facebook account **that same day** at 4:33 p.m. He clearly knew it was both possible and at least as simple to accomplish as the instructions provided by Marquette seemed to make it.

Crowe's efforts to avoid producing this material have unnecessarily delayed these proceedings and have wasted the time of his opponent and this Court. Accordingly, the Court orders the following:

(1) That every page of the Facebook account history for the "Brannon CroWe" account that was provided the Court for *in camera* review be produced to Marquette in the same format produced to the Court, no later than Wednesday, January 21, 2014.

(2) As to any Facebook account Crowe claims to have once had but can no longer access, he is to provide to Marquette his login information, including password, for that account so that Marquette can evaluate that response for itself.

(3) To the extent Marquette still wishes to subpoena Facebook for any or all of these records independent of what the Court has ordered Crowe to produce, Crowe is ordered to execute any consent or authorization form required by Facebook for that purpose.

(4)  To the extent the production of these materials leads Marquette to request another deposition of Crowe on these issues, the parties are instructed that such a deposition may go forward without the necessity of filing a further motion.

New Orleans, Louisiana, this ___20th___ day of _____January_____, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE